


## VIRGINIA ASSOCIATION OF REALTORS®
## EXCLUSIVE AUTHORIZATION TO SELL

(This is a legally binding contract. If not understood, seek competent advice before signing)

This AGREEMENT made as of __March 28, 2017__, by and between ~~Barbara~~ Betty L. Burke / Barbara McClanahan _____ ("Owner"); and
__Core Real Estate LLC__ ("Broker"), provides:

1. In consideration of services rendered by Broker to Owner, Owner grants to Broker the EXCLUSIVE and irrevocable right to sell certain real estate, and all improvements thereon which is owned by Owner and which is hereafter described (all herein called the "Property"), during the period commencing on __03/29/2017__ and expiring at midnight on __03/28/2018__ (the "initial period of time"), for the price of __One Million, Four Hundred Fifty Thousand__ Dollars ($__1,450,000.00__) ("Listing Price"), payable in cash, or at such price and/or on such terms as may be agreed by the parties.

2. REAL PROPERTY: The Property is located in the City or County of __Charlottesville__ and is described as follows: __See Attached Deed and Overview__ _____
   _____ and more commonly known as
   _____
   (i.e., street, town, village, etc.).

3. BROKER FEE:
   (a) If the Property is sold or exchanged by Broker, or by Owner with or without the assistance of Broker, within the initial period of time or any extension thereof, Owner agrees to pay Broker a fee of __6%__ (the "Fee"). If, within __30__ days after the expiration of the initial period of time or any extension thereof, the Property is sold or exchanged by Broker, by Owner, or by any other person, to a purchaser or purchasers to whom the Property was shown, offered, or introduced by Broker, or by any licensed broker or salesperson employed by or affiliated with Broker, Owner agrees to pay Broker the Fee. Notwithstanding the foregoing, Owner shall not be obligated to pay the Fee to Broker if, after the expiration of the initial period of time or any extension thereof, Owner enters into an exclusive authorization to sell or exchange the Property with a licensed broker or salesperson, other than Broker or a licensed broker or salesperson employed or affiliated with Broker, and the Property is sold or exchanged pursuant to such exclusive authorization. For purposes of the Agreement, if an offer is presented to Owner within the initial period of time or any extension thereof, but (i) is accepted by Owner after expiration of the initial period of time or any extension thereof, or (ii) Owner make a counteroffer which is accepted by the purchaser after the expiration of the initial period of time or any extension thereof, the Owner shall pay Broker the Fee as if the Property had been sold during the initial period of time or any extension thereof.

   (b) Broker has advised Owner of Broker's firm policy regarding cooperating with and compensating other real estate licensees. Owner authorizes Broker to cooperate with and compensate other brokers via the following [select one]: ☒ __3.000__ % of the gross sales price OR ☐ the sum of $ _____.
   Such compensation shall be paid by Owner at settlement. Owner acknowledges that the cooperating fee set forth in this paragraph represents an obligation of Broker to a selling broker per MLS rules, and agrees that Owner is responsible to pay this amount to Broker as part of the Fee, which will then be paid to the cooperating broker. Owner understands the responsibility for the payment of a cooperating broker's compensation may be determined as a result of civil action or arbitration, or in a separate agreement between Broker and a cooperating broker claiming such fee; provided however, such fee shall not exceed the amount set forth in this paragraph 3(b) without consent of Owner. Owner agrees to participate fully, at Owner's sole expense, in any legal action or arbitration proceedings that may arise with respect to the compensation due to a cooperating broker. Owner shall indemnify and hold Broker harmless from any monetary loss suffered by Broker due to any award against Broker arising from Owner's nonpayment of compensation that is due to a cooperating broker as a result of the sale of the Property. Owner agrees not to negotiate Broker's Fee or any purchaser agent/representative's compensation in a real estate sales contract for the Property. This obligation shall survive expiration or earlier termination of this Agreement and settlement of the sale of the Property.

(b) If Owner should withdraw the Property from the market during the initial period of time or any extension thereof, without written agreement from Broker, or otherwise prevents Broker from selling the Property during the initial period of time or any extension thereof, such action shall constitute a breach of this Agreement, and Owner agrees to pay Broker the Fee set forth in paragraph 3(a) as liquidated damages, and not as a penalty. If the Fee is expressed as a percentage of the purchase price of the Property, the gross sales price, for the purposes of computing the Fee, shall be the Listing Price.

(d) If, after a valid contract for the purchase of the Property is executed by Owner and a purchaser or purchasers, there is a default by such purchaser or purchasers which prevents performance of such contract through no fault of the Owner, Broker agrees that Owner will not be liable for the Fee of Broker and that Broker shall look to such defaulting purchaser or purchasers for compensation relating to such contract. Owner agrees if such a default occurs, this Agreement shall remain in effect until its expiration and that payment of the Fee by such defaulting purchaser or purchasers shall not satisfy any obligation that may arise if, after to such default, another valid contract for the purchase of the Property is brought about by Broker.

(e) If after a valid contract for the purchase of the Property is executed by Owner and a purchaser or purchasers, there is a default by Owner which prevents performance of such contract through no fault of Broker, or if Owner fails to fully perform the obligations of Owner set forth herein, the Owner shall be liable to Broker for the Fee, as compensation for its services hereunder, and the reasonable attorney's fees and expenses incurred by Broker, if any, in enforcing the terms and conditions hereof. In any action brought by Broker or Owner under this Agreement, the prevailing party or parties in such action shall be entitled to receive from the non-prevailing party or parties, jointly and severally, in addition to any other damages or awards, reasonable attorneys fees and costs expended or incurred in prosecuting or defending such action.

4. **AGENCY RELATIONSHIP:**

(a) In accordance with the Virginia Real Estate Board ("VREB") regulations, Broker hereby discloses to Owner that Broker and Broker's salespeople are representing Owner as a standard agent in connection with marketing the Property under this Agreement and owe Owner the duties set out in this Agreement and under Section 54.1-2131 of the Code of Virginia. At the same time, brokers and their salespeople are required to treat all parties to a transaction honestly. Without breaching their duties to Owner, Broker and its salespeople may provide prospective purchasers with information about the Property and may assist a prospective purchaser in preparing an offer to purchase the Property. Broker and its salespeople have a duty to respond accurately to a prospective purchaser's questions and to submit to Owner all offers to purchase the Property.

(b) If the Property is shown to a prospective purchaser who is represented by Broker and such purchaser client of Broker wishes to make an offer on the Property, and Broker has not designated representatives to represent Owner and purchaser, the Broker will be acting as a representative for both Owner and purchaser in the transaction. In such a transaction, Broker will remain impartial to Owner and purchaser. Owner understands that Broker shall not be liable to either party for refusing or failing to disclose information which, in the sole discretion of Broker, would harm one party's bargaining position and would benefit the other party. However, Broker shall not be prevented from disclosing to the purchaser any known material defects in the Property or any other matter that must be disclosed by law and/or regulation. Broker will not disclose (i) to the purchaser information about what price Owner will accept other than the Listing Price, or (ii) to Owner information about what price the purchaser will pay other than the written offered price. If Owner and purchaser do not enter into an agreement for the purchase of the Property such dual representation shall terminate.

(c) Because of such dual representation, Owner understands that Owner and purchaser have the responsibility of making their own decisions as to what terms are to be included in any purchase agreement. Owner should be aware of the implications of Broker's dual representation including the limitation on Broker's ability to represent Owner or the purchaser fully and exclusively. Owner understands that Owner may seek independent legal counsel in order to assist with any matter relating to a purchase agreement or to the transaction that is the subject matter of a purchase agreement. Provided Broker has acted in accordance with its obligations under this Agreement, Broker shall not be liable for any claims, damages, losses, expenses or liabilities arising from Broker's role as a dual representative. Owner shall have the duty to protect its own interests and should read any purchase agreement carefully to insure that it accurately sets forth the terms Owner wants included in the purchase agreement.

VAR FORM 400 Revised 01/17        Page 2 of 6
Reviewed: 01/17

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        Barbara McClauhan

(d) When acting as a dual representative, Broker will treat Owner and purchaser honestly; will disclose material facts about the Property that are known to Broker as required by law and/or regulation; may help the purchaser to arrange for property inspections; may explain closing costs and procedures; may help the purchaser compare financing alternatives; may provide information about comparable properties so Owner and the purchaser may make an educated decision about the price to be contained in the purchase agreement; and will work diligently to facilitate the sale and will work with Owner's and the purchaser's lawyers, tax accountants, inspectors and other advisors in order to expedite the closing.

(e) When acting as a dual representative, Broker may not: disclose confidential information that Broker may know about either Owner or the purchaser (including but not necessarily limited to motivation to sell or buy, price, terms and/or conditions of sale which are acceptable, and negotiating strategy) without written permission of the relevant party; disclose the price Owner will accept other than Listing Price without written permission of Owner; disclose the price the purchaser is willing to pay other than contained in any offer without written permission of the purchaser; recommend or give advice regarding the price the purchaser should offer or pay for the Property; recommend or give advice regarding the terms and conditions of sale the purchaser should offer for the Property; recommend or give advice regarding the price Owner should accept or that should form the basis of a counteroffer; or recommend or give advice regarding the terms and conditions of sale Owner should accept or that should form the basis of a counteroffer.

5. **OWNER'S DUTIES:** Owner shall: work exclusively with Broker during the term of this Agreement; comply with the reasonable requests of Broker to supply any pertinent information or personal data needed to fulfill the terms of this Agreement; pay Broker the compensation set forth in this Agreement; make the Property available during reasonable hours for potential purchasers to view properties; and inform all purchasers and licensees whom Owner contacts of Owner's brokerage relationship with Broker.

6. **BROKER DUTIES:** Broker agrees to make commercially reasonable efforts to obtain a purchaser for the Property during the initial period of time and any extension thereof. Owner acknowledges that Broker shall disclose to potential purchasers of the Property all material adverse facts pertaining to the physical condition of the Property actually known by Broker.

7. **ADVERTISING:**
   (a) Owner agrees that during the initial period of time or any extension thereof Broker is authorized to place "FOR SALE" signs on the Property, to remove any other "FOR SALE" signs and to take all appropriate action to bring about a sale of the Property. Owner agrees to make the Property available to Broker and real estate brokers and salespersons employed or affiliated with Broker at all reasonable hours for showing to prospective purchasers. Owner also agrees to refer to Broker all inquiries or offers which Owner may receive regarding the Property.
   (b) Unless otherwise provided herein, Broker agrees to submit pertinent information concerning the listing of the Property (including information which may be provided on a separate form or document) to any Multiple Listing Service ("MLS") serving the geographic area in which the Property is located of which Broker is a member to distribute such information to other brokers, and to solicit the cooperation of other brokers in securing a purchaser or purchasers for the Property. Owner understands that the listing data may get disseminated to third party websites through means other than the MLS. Owner acknowledges that the accuracy of the listing data is controlled by the third party websites and is outside of Broker's control.
   (c) Unless the Property is not being submitted to the MLS, Broker is authorized to make access available to cooperating brokers and their clients or customers.
   (d) Broker shall have the right and sole discretion to advertise the Property in commercially reasonable ways, and unless otherwise provided herein, shall have the right to place advertisements of the Property on the Internet communications network and in any Internet Data Exchange program in which Broker participates.
   (e) Owner authorizes the dissemination of Property/sales information to MLS participants, including electronic format, magazines and other media.
   (f) If authorized below, Broker's website may also allow third-parties to (i) write comments or reviews about the Property or display a hyperlink to comments or reviews in immediate conjunction with particular listings, or (ii) display an automated estimate of the market value of the Property (or hyperlink to such estimate) or other listings in immediate conjunction with the Property.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        Barbara McClanahan

If Owner does **not** want the Property listing or address displayed on the Internet, Owner must complete the "OPT-OUT OF INTERNET" section below.

---

**OPT-OUT OF INTERNET**
**Complete this section only if Owner desires to opt-out of Internet display**

Owner may opt-out of having the Property listing or property address displayed on the Internet by selecting Option A or B below.

**Option A:** ☐ Owner has advised Broker that Owner does not want the Property displayed on the Internet.
   **OR**
**Option B:** ☒ Owner has advised Broker that Owner does not want the address of the Property displayed on the Internet. In the event Owner does not authorize the display of the Property address, only the street address will not be displayed, other data such as zip code, county, etc. may be displayed.

Owner understands and acknowledges that if **Option A** has been selected, consumers who conduct searches for listings on the Internet will not see information about the Property in response to their search.

_____/_____ **(Owner's Initials)**

---

____✓__/_____ Owner (select one) ☒ authorizes OR ☐ does not authorize third-parties to write comments or reviews about the Property or provide hyperlinks to comments or reviews to any property in immediate conjunction with the Property. In the event Owner does not authorize the display of the Property address, only the street address will not be displayed, other data such as zip code, county, etc. may be displayed.

____✓__/_____ Owner (select one) ☒ authorizes OR ☐ does not authorize an automated estimate of the market value of the Property (or any hyperlink to such estimate) or any property in immediate conjunction with the listing. This provision does not control the display of such estimated value of the Property on third party websites such as syndicated websites.

____✓__/_____ Owner (select one) ☒ authorizes OR ☐ does not authorize Broker to advertise on social media, understanding that there may be third-parties comments or reviews about the Property. In the event Owner does not authorize the display of the Property address, only the street address will not be displayed, other data such as zip code, county, etc. may be displayed.

8. **LOCKBOX:** Owner hereby ☐ does OR ☒ does not authorize Broker to place a lock box on the Property.

9. **PROPERTY OWNERS' ASSOCIATION ACT:**
   (a) Owner represents to Broker that the Property ☐ is OR ☒ is not located within a development that is subject to the Virginia Property Owners' Association Act (Section 55-508 et seq. of the Code of Virginia) (the "POA Act"). If the Property is within such a development, the POA Act requires Seller to obtain from the Property Owners' Association an association disclosure packet and provide it to the purchaser.
   (b) The purchaser may cancel the purchase agreement within three or six days (depending on the manner of delivery) after receiving the association disclosure packet or being notified that the association disclosure packet will not be available. The right to receive the association disclosure packet and the right to cancel the contract are waived conclusively if not exercised before settlement.

10. **CONDOMINIUM ACT:**
    (a) Owner represents to Broker that the Property ☐ is OR ☒ is not located within a development that is subject to the Virginia Condominium Act (Section 55-79.39 et seq. of the Code of Virginia) (the "Condominium Act"). If the Property is within such a development, the Condominium Act requires Seller to obtain from the unit owners' association a condominium resale certificate and provide it to the purchaser.
    (b) The purchaser may cancel the purchase agreement within three or six days (depending on the manner of delivery) after receiving the condominium resale certificate. The right to receive the condominium resale certificate and the right to cancel the contract are waived conclusively if not exercised before settlement.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com          Barbara McClanahan

11. **SEWAGE SYSTEM DISCLOSURE:** Pursuant to Section 32.1-164.1:1 of the Code of Virginia, Owner must disclose to the purchaser if the onsite sewage system serving the Property fails to meet the Board of Health's current regulatory requirements and Owner has applied for or obtained a waiver from the Board of Health for the system. Disclosure ☐ is OR ☒ is not applicable to the Property.

12. **VIRGINIA RESIDENTIAL PROPERTY DISCLOSURE ACT:** Virginia Residential Property Disclosure Act (Section 55-517 et seq. of the Code of Virginia) requires the owner of residential real property to furnish the purchaser of such property a disclosure statement in a form provided by the VREB containing certain information and disclosures for the benefit of purchasers and stating that the owner makes no representations or warranties as to the condition of such property and that the property is being sold "as is" with all defects that may exist, if any, except as otherwise provided in the purchase contract. Failure to make such disclosure in a timely manner or any misrepresentation contained in the disclosure may result in termination of the purchase contract or an award of damages to the purchaser. Broker will furnish Owner with the appropriate disclosure form for completion by Owner.

13. **OTHER OFFERS:** Owner ☒ does OR ☐ does not authorize Broker to use Broker's best judgment in determining how and when to divulge the existence of an offer or offers on the Property of which Broker is aware to other brokers or purchasers, if asked. Owner shall inform Broker if Owner is unwilling to permit Broker to divulge the existence of any particular offer(s) on the Property. Broker and its licensees shall not disclose to prospective purchasers (or their real estate licensees) the terms of any other offers to purchase the Property received by Broker without Owner's prior written consent.

14. **INDEMNIFICATION:**
    (a) Owner acknowledges and agrees that in consideration of the use of the services and facilities of Broker or the MLS identified in paragraph 7, neither Broker, its officers, directors and employees, nor any real estate broker or salesperson employed by or affiliated with Broker showing the Property to purchaser or prospective purchasers, nor the MLS, nor the directors, officers and employees thereof, including officials of any parent association of REALTORS®, shall be liable for any vandalism, theft or damage of any nature whatsoever to the Property or its contents during the initial period of time and any extension thereof, and Owner waives any and all rights, claims, and causes of action against any of them and hold them harmless for any property damage or personal injury arising from the use of or access to the Property by any person during the initial period of time and any extension thereof, but excluding property damage or personal injury arising out of the negligence of Broker or its officers, directors and employees or any real estate broker or salesperson employed by or affiliated with Broker.
    (b) If Owner has provided to Broker relevant information about the Property, Owner represents and warrants that to the best of Owner's knowledge and belief such information or the information contained in the disclosure form completed in compliance with the Virginia Residential Property Disclosure Act is true and correct as of the date given, and that Owner will update such information promptly in the event of a material change in such information. The parties agree that such information is incorporated into and constitutes a part of this Agreement.

15. **RECORDINGS WITHIN THE PROPERTY:**
    (a) Owner ☐ does OR ☒ does not have a recording system in the Property. In the event Owner has a recording system in the Property which records or transmits audio, Owner understands that recording or transmitting of audio may result in violation of state and/or federal wiretapping laws. Owner hereby releases and indemnifies Broker, Broker's designated agents, sub-agents, sales associates and employees from any liability which may result from any recording or transmitting in the Property.
    (b) Seller understands that while potential purchasers viewing the Property should not engage in photography, videography or videotelephony in the Property without prior written permission, such recordings or transmissions may occur. Seller should remove any items of a personal nature Seller does not wish to have recorded or transmitted. Owner hereby releases Broker, listing sales associates and employees from any liability which may result from any recording or transmission in the Property.

16. **MISCELLANEOUS:**
    (a) Owner is advised that because some purchasers may employ the services of purchaser agents or representatives, Owner should not disclose any confidential information to prospective purchasers or to real estate licensees other than Broker.

(b) This Agreement is intended solely to define the relationship between Owner and Broker. It is not intended to be an offer to sell to a third party, nor may any third party rely upon it as such an offer. Further, this Agreement does not confer upon Broker the power or authority to either make or accept an offer or counteroffer to sell the Property. The Property may be sold only by a written agreement executed by Owner, or by an attorney-in-fact for Owner under a written power of attorney. Broker's authority hereunder shall be limited to marketing the Property for sale and such activities as are necessary or incidental thereto, including without limitation accepting and holding an earnest money deposit in accordance with the VREB regulations.

(c) In the event of a sale of the Property, Owner agrees to convey the Property to any purchaser or purchasers by general warranty deed with the usual English covenants of title and free and clear from all encumbrances, tenancies, and liens (for taxes or otherwise), but subject to applicable easements and restrictive covenants of record not adversely affecting the use of the Property, and subject in all events, to the specific terms and conditions contained in the contract of sale.

(d) This Agreement may not be modified or changed except by written instrument executed by the parties, and it shall be construed, interpreted, and applied according to the laws of the Commonwealth of Virginia. It shall be binding upon and shall inure to the benefits of the heirs, personal representatives, successors, and/or assigns of the parties.

(e) Owner understands that Owner has the right to choose an attorney to prepare the deed conveying title to the Property or otherwise to represent Owner in connection with the sale of the Property.

(f) In the sale, purchase, exchange, rental or lease of real property, Broker has the responsibility to offer equal service to all clients and prospects and shall not discriminate on the basis of any protected class under Federal, state or local law or the REALTOR® Code of Ethics.

17. **ELECTRONIC SIGNATURES:** _AB_ / _____ If this paragraph is initialed by both parties, then in accordance with the Uniform Electronic Transactions Act (UETA) and the Electronic Signatures in Global and National Commerce Act, or E-Sign, regarding electronic signatures and transactions, the parties do hereby expressly authorize and agree to the use of electronic signatures as an additional method of signing and/or initialing this Agreement. The parties hereby agree that either party may sign electronically by utilizing an electronic signature service.

18. **OTHER TERMS:** (Use this space for additional terms not dealt with elsewhere in this Agreement.)
_Lot to exclude Stone house at 210 Fifth Street_
_Subject to Court approval_

Witness the following duly authorized signatures:

**OWNER** _Betty L McClanahan_

_Through 3/28/17_
Date    Owner Barbara McClanahan
        BETTY L.
____/_____
Date.   Owner

____/_____
Date    Owner

____/_____
Date    Owner

**BROKER**

_Cora Real Estate LLC_

By: _____
Name: _Andrew Baldwin_
Date: _3/28/17_

COPYRIGHT©2017 by the Virginia Association of REALTORS®. All rights reserved. This form may be used only by members in good standing of the Virginia Association of REALTORS®. The reproduction of this form, in whole or in part, or the use of the name "Virginia Association of REALTORS®", in connection with any other form, is prohibited without prior written consent of the Virginia Association of REALTORS®.

VAR FORM 400 Revised 01/17                Page 6 of 6
Reviewed: 01/17

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Barbara McClanahan

