## AGREEMENT OF SALE

### KEY PROVISIONS SUMMARY

| | |
|---|---|
| Effective Date: | July 20, 2017, which is the date on which this Agreement shall have been executed by the last to sign of Seller and Buyer. |
| Seller: | Betty L. McClanahan |
| Buyer: | John C. Pritzlaff, IV and/or assigns |
| Property: | Certain real property containing approximately 1.06 acres and the improvements thereon located at 210 5th Street, Charlottesville, Virginia, and as more particularly described by a Parcel ID Numbers 290051000, 290050000, 290049000, 290048000, 290047000, 290046000, 290045000 together with all appurtenances, rights, privileges and easements benefiting, belonging or pertaining thereto, and together with any improvements and fixtures located thereon, as applicable, and all furniture, fixtures, equipment, and items of tangible property therein. |
| Escrow Agent: | Core Real Estate, LLC |
| Earnest Money: | $10,000 |
| Purchase Price: | $1,250,000 |
| Seller's Broker: | CORE Real Estate, LLC |
| Acceptance Date: | July 24, 2017 |

| Notices: | Seller: | Buyer: |
|---|---|---|
| | Betty L McClanahan<br>PO Box 230<br>Keswick, VA 22947 | John Pritzlaff<br>1443 Plymouth Road<br>Charlottesville, VA 22903 |
| | With a copy to: | With a copy to: |
| | Andrew Baldwin<br>Core Real Estate, LLC<br>600 E. Water Street, Suite H<br>Charlottesville, VA 22902 | |

If there are any inconsistencies between the Key Provisions Summary and the other provisions of this Agreement, then the Key Provisions Summary shall control.

Seller's Initials _BLMc_    Buyer's Initials _JCP_

## AGREEMENT OF SALE

THIS AGREEMENT OF SALE (the "Agreement") is made as of the Effective Date (as set forth in the Key Provisions Summary) by and between Seller and Buyer.

### Recitals

A. Seller is the owner in fee simple of the Property (as defined in the Key Provisions Summary).

B. Seller desires to sell to Buyer and Buyer desires to purchase from Seller the Property upon the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, payment of the Earnest Money, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties mutually covenant and agree as follows:

1. **Agreement of Sale and Purchase.** Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller, upon the terms and conditions set forth in this Agreement, the Property.

2. **Earnest Money.** On or before the Effective Date, Buyer shall deposit with the Escrow Agent (as set forth in the Key Provisions Summary) the Earnest Money (as set forth in the Key Provisions Summary). All sums paid by Buyer to Escrow Agent hereunder are included as part of the Earnest Money. Escrow Agent will deposit the Earnest Money in a non-interest bearing escrow account; and shall hold, refund, disburse and/or distribute, as the case may be, the Earnest Money in accordance with the terms hereof. Upon request from Escrow Agent, Seller and Buyer will enter into such escrow agreement, as Escrow Agent may reasonably request; and will jointly and severally agree to hold Escrow Agent harmless with respect to the performance of its duties as Escrow Agent, except to the extent caused by the gross negligence or willful misconduct of Escrow Agent.

3. **Purchase Price.**

    3.1 **Payment.** The Purchase Price (as set forth in the Key Provisions Summary) for the Property shall be payable as follows: (i) the Earnest Money, which shall be delivered to Seller at Closing; and (ii) the balance of the Purchase Price, which shall be payable by Buyer to Seller at Closing in United States cash, by bank or certified check or by wired funds available for immediate credit.

    3.2 **Acreage.** The parties hereto acknowledge and agree that Seller is selling and Buyer is purchasing an entire parcel of land, and that the Purchase Price will not be adjusted in the event the number of acres contained in the boundaries of the Property (as set forth in the

Key Provisions Summary) is later shown to be more or less than the number of acres now thought by the parties to be contained in the boundaries of the Property.

3.3 Method of Payment. Buyer shall pay the Purchase Price, as adjusted pursuant to the terms of this Agreement and by applicable costs and prorations, at Closing in cash, by bank or certified check or by wired funds available for immediate credit. The Earnest Money shall be paid over to Seller by Escrow Agent at Closing and shall be applied against the Purchase Price.

4. Costs and Prorations at Closing.

4.1 Transfer Taxes, Recording Fees and Other Fees. Seller shall pay all grantor transfer taxes applicable to the transaction contemplated hereby, the cost to prepare the deed from Seller, and the cost of recording all documents necessary to correct or remove defects in or encumbrances upon Seller's title to the Property (if applicable). Buyer shall pay the cost of any grantee transfer taxes, title examination fees, the cost of any title insurance obtained by Buyer, the cost of a current survey of the Property, the cost of preparing and/or recording all documents to be recorded other than those referred to in the preceding sentence, and any other costs related to the Closing. Each party shall pay its own attorney's fees.

4.2 Taxes. Ad valorem taxes ("Taxes") assessed against the Property for the year in which Closing occurs shall be prorated on a calendar year basis as of the day of Closing. If the Property is in the tax records as a separate parcel on the date of Closing, the Taxes shall be prorated on the basis of time and applied in adjustment of the Purchase Price due at Closing. If the Property is part of a larger parcel during the calendar year or tax year of the Closing, the Taxes shall be prorated on the basis of acreage (and improvements on such acreage, if any) as well as time, and Buyer shall pay to Seller Buyer's resulting share of the Taxes at Closing and Seller shall pay the Taxes due and payable for the year of Closing on the entire larger parcel of which the Property is a part when the same become due, and Buyer shall, as soon as is practicable, cause the Property to be reflected as a separate parcel in the tax records.

4.3 Utilities. If any utility services are presently being provided to the Property, Seller will pay for such services through the day of Closing, but thereafter any such services in the name of Seller shall be terminated.

5. Conveyance of Title.

5.1 Deed. Seller shall convey title to the Property to Buyer by general warranty deed, subject to Taxes for the current year which shall be prorated between the parties at Closing as set forth above and subject to easements, encumbrances, restrictions and any other matters of record, other than defects and encumbrances to be removed, corrected and/or satisfied in accordance with Section 6. Seller covenants and agrees not to cause or permit any other defects in or liens, encumbrances or limitations upon Seller's title to the Property to arise from and after the Effective Date.

5.2 Legal Description. The Property shall be described in Seller's general warranty deed in accordance with the historic description of the Property. If requested by Buyer and at Buyer's sole cost and expense, a legal description taken from a current and accurate survey of the Property to be obtained by Buyer at Buyer's expense from a registered land surveyor may be attached to a quit claim deed of the Property from Seller.

6. Inspection Period.

 6.1 Time Period. Buyer shall have the right for a period of sixty (60) days from and after the Effective Date (the "Inspection Period") within which to examine Seller's title to the Property and to notify Seller of any defects in or encumbrances upon Seller's title to the Property. Buyer shall have the right to terminate the contract for any reason during the Inspection Period. Seller shall have the right, but not the obligation, to remove, correct and/or satisfy such defects and encumbrances upon Seller's title to the Property prior to Closing, and Seller shall notify Buyer within fifteen (15) days after the receipt of notice of title objections from Buyer as to whether Seller will seek to remove, correct and/or satisfy such defects and encumbrances, and shall keep Buyer reasonably apprised of Seller's progress toward removing, correcting and/or satisfying the same. In the event there remains at Closing any defects in or encumbrances upon Seller's title to the Property for which Buyer shall have given notice as herein provided, then Buyer may elect:

  (a) To consummate the transaction contemplated hereby without regard to such defects and encumbrances, in which event, the Purchase Price shall not be adjusted because of such defects and encumbrances or have the right to offset or remove encumbrances; or

  (b) To terminate this Agreement, whereupon the Earnest Money will be refunded to Buyer and, except for the indemnity provisions, this Agreement shall be null and void and of no further force and effect whatsoever, and no party shall have any further rights, duties, or obligations hereunder. To the extent that Buyer discovers a defect or encumbrance not otherwise disclosed following the expiration inspection period, no Earnest Money will be refunded to Buyer.

 6.3 Access and Inspection. Buyer shall have the right during the Inspection Period to determine whether the Property is suitable for Buyer's intended development and/or use thereof. During the Inspection Period, Buyer, its agents and independent contractors, shall have reasonable access to the Property for the purposes of making inspections, surveys, soil and drainage tests, and generally collecting the information deemed necessary by Buyer to make its determination as to the suitability of the Property for the Buyer's intended development.

 6.4 Required Notice. If Buyer furnishes written notice to Seller prior to the expiration of the Inspection Period that the Property is not suitable for Buyer's intended development and/or use thereof, then the Earnest Money shall be returned promptly to Buyer and, except for the indemnity provisions, this Agreement shall be void and of no further force or effect, and the parties hereto shall have no further duties or obligations to one another hereunder. If, during the Inspection Period, Buyer does not furnish the aforesaid written notice to Seller that the Property is not suitable for Buyer's intended development and/or use, or if Buyer notifies Seller during the Inspection Period that the Property is suitable for Buyer's intended development and/or use, then this Agreement shall continue to be effective and binding upon the parties and the conditions set forth in this Section shall be deemed to have been satisfied. Upon the expiration of the Inspection Period, if Buyer has not provided written notice to Seller that the Property is not suitable for its development and/or use, the Earnest Money shall then be non-refundable to Buyer, except in the event of Seller's default hereunder, but such Earnest Money shall be applied against the Purchase Price.

 6.5 Indemnity. Buyer covenants and agrees to indemnify and hold harmless Seller against any and all loss, liability, costs, claims, demands, damages, actions, causes of action, and suits arising out, resulting from or relating to Buyer's exercise of any right under this

Agreement to enter upon the Property, including, without limitation, for the purpose of making inspections, surveys, borings, and tests thereon, and Buyer shall be responsible to repair or pay for the repair of any damage to the Property or other damages or injuries occasioned thereby or resulting therefrom. The indemnification obligations of Buyer shall survive the expiration or earlier termination of this Agreement.

7. Risk of Condemnation Pending Closing. If, prior to Closing, condemnation or eminent domain proceedings shall be commenced by any competent public authority against the Property, or any part thereof, Seller shall give Buyer written notice thereof. Within five (5) day of Buyer's notice of the commencement of such proceedings, Buyer shall notify Seller in writing of Buyer's election of either: (i) accepting the Property subject to the proceedings, whereupon any awards shall be paid or assigned to Buyer; or (ii) terminating this Agreement, whereupon, except for the indemnity provisions, this Agreement shall be void and of no further force or effect and the parties shall have no further duties or obligations to one another hereunder. If Buyer does not make such election within such five (5) day period, then Buyer shall be deemed to have elected the option (i) set forth above, time being of the essence.

8. Condition of Property. Buyer acknowledges that Buyer has the right and shall have ample opportunity to fully inspect the Property and, if Buyer proceeds with the Closing, Buyer shall be purchasing the Property wholly in "AS IS", "WHERE IS" condition, without warranty or representation by Seller whatsoever, express or implied, pertaining to the Property, including, without limitation, the condition thereof or the suitability or fitness thereof for any particular use or purpose, the merchantability thereof or of any improvement thereon, the value or dimensions thereof, or any other matter with respect to the Property or the improvements thereon.

9. Closing. The Closing (the "Closing") of the acquisition shall occur, if at all, at the offices of Seller's attorney or at another place designated by Seller and Buyer. The date of the Closing shall be a date mutually selected by Seller and Buyer on or before the date sixty (60) days after the expiration of the Inspection Period.

10. Possession. Unless otherwise agreed, Seller shall deliver possession of the Property at Closing.

11. Closing Documents. Seller shall execute and deliver at Closing Seller's deed, an owner's affidavit with respect to the Property sufficient to enable Buyer to obtain title insurance on the Property, and an affidavit evidencing Seller's nonforeign status for federal tax purposes. At or prior to Closing, each party shall deliver to the other party documents reasonably required by the other party to establish the authority of such party to enter into and close the transactions contemplated hereby and to complete and evidence the acquisition of the Property contemplated hereby, including, without limitation, a closing statement and a W-9 form and such other documents as are reasonably necessary or appropriate to satisfy applicable federal requirements for the reporting of real estate transactions.

12. Breach, Termination, and Expiration.

12.1 Breach by Buyer. Notwithstanding anything to the contrary contained herein and notwithstanding that this Agreement may have been terminated pursuant to the terms hereof, in the event Buyer breaches this Agreement, the Earnest Money shall be promptly paid over to Seller as full liquidated damages for Buyer's failure or refusal to close in accordance with the terms of this Agreement. The parties acknowledge the difficulty of ascertaining Seller's damages in such a circumstance and agree that the amount of the Earnest Money represents a

reasonable and mutual attempt by Buyer and Seller to anticipate the consequence to Seller of Buyer's breach. Upon the implementation of this Section, this Agreement, except for the indemnity provisions, shall be void and of no further force and effect and no party shall have any rights hereunder to specific performance hereof or to damages for the breach hereof.

        12.2    Breach by Seller. Notwithstanding anything to the contrary contained herein, in the event Seller breaches this Agreement, the Earnest Money, plus an amount equal to the amount of the Earnest Money (said original Earnest Money, and such additional Earnest Money amount being hereinafter referred to together as "Seller's Default Payment") shall be promptly paid to Buyer as full liquidated damages for Seller's failure or refusal to close in accordance with the terms of this Agreement. The parties acknowledge the difficulty of ascertaining Buyer's damages in such a circumstance and agree that the amount of the Seller's Default Payment represents a reasonable and mutual attempt by Seller and Buyer to anticipate the consequence to Buyer of Seller's breach. Upon the implementation of this Section, this Agreement, except for the indemnity provisions hereof, shall be void and of no further force and effect and no party shall have any rights hereunder for specific performance hereof or to damages for the breach hereof. Seller has no other liability in connection with this Agreement.

        13.    Cancellation of Record of Purchaser's Rights. In the event this Agreement expires or is terminated without closing, Buyer's rights and interests in and to the Property shall automatically be rendered void, without action, by Seller or Buyer. The foregoing notwithstanding, Buyer hereby covenants and agrees unto Seller that, in the event this Agreement expires or is terminated without closing, Buyer shall, upon request of Seller, execute and deliver to Seller a quitclaim deed releasing the Property from any right or interest of Buyer.

        14.    Confidentiality. All documents, records, and materials provided to or made available to Buyer hereunder (collectively, the "Due Diligence Documents") are confidential and shall not be distributed or disclosed by Buyer to any person or entity not associated with Buyer. If the transaction evidenced hereby fails to close for any reason whatsoever, Buyer shall return to Seller all copies of the Due Diligence Documents which Seller or its agents may have delivered to Buyer in accordance with this Agreement. THE FURNISHING OF ANY MATERIALS, DOCUMENTS, REPORTS, OR AGREEMENTS DESCRIBED ABOVE SHALL NOT BE INTERPRETED IN ANY MANNER AS A REPRESENTATION OR WARRANTY OF ANY TYPE OR KIND BY SELLER, ANY SHAREHOLDER OR PARTNER OF SELLER OR AGENT OF SELLER, OR ANY OFFICER, DIRECTOR, OR EMPLOYEE OF SELLER, OR ITS AGENTS, OR ANY OTHER PARTY RELATED IN ANY WAY TO ANY OF THE FOREGOING.

        15.    1031 Exchange. Seller shall have the right to cause the Closing to occur as part of a "like-kind" exchange pursuant to the provisions of Section 1031 of the Internal Revenue Code of 1986, as amended, and the regulations thereunder. Buyers agree to cooperate with Seller in effecting a qualifying like-kind exchange and to execute such documents as are necessary to effect such like-kind exchange.

        16.    Assignability. Buyer may assign Buyer's rights under this Agreement without Seller's prior written consent.

        17.    Notices. Any notice, election, or other communication required or permitted hereunder shall be in writing and (a) delivered by hand to the following named persons or by national overnight express delivery service, postage and charges prepaid, to the addresses in the Key Provisions Summary; and (b) deemed given when delivered by hand, or upon deposit with a national overnight express delivery service. Each party hereto may change its address and

addressee for notice, elections, and other communications from time to time by notifying the other parties hereto of the new address and addressee in the manner provided for giving notice herein.

18. **Brokers.** The parties represent to each other that they have not dealt with any real estate broker or agent in connection with this transaction other than Brokers, whose commissions shall be paid by Seller pursuant to a separate agreement between the Seller and said brokers, if and only if the transaction closes but not otherwise. Each party shall indemnify and hold the other harmless from any other claim or demand made by a broker or agent with respect to this transaction because of acts or omissions of such party. John Pritzlaff is a licensed agent in the State of Virginia.

19. **Miscellaneous.**

   19.1 **Applicable Law.** This Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Virginia.

   19.2 **Business Days.** If the final day of any period or any date of performance under this Agreement falls on a Saturday, Sunday or legal holiday, then the final day of the period or the date of performance shall be extended to the next day which is not a Saturday, Sunday or legal holiday.

   19.3 **Entire Agreement.** This Agreement constitutes the entire agreement of the parties and may not be amended except by written instrument executed by all the parties hereto.

   19.4 **Headings.** The section headings are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope or content of this Agreement or any provision hereof.

   19.5 **Severability.** The provisions of this Agreement are intended to be independent and, in the event any provision hereof should be declared by a court of competent jurisdiction to be illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the remainder of this Agreement.

   19.6 **Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of Seller and Buyer, and their respective successors and assigns, if any.

20. **Offer and Acceptance; Binding Effect.**

   20.1 **Acceptance.** This Agreement, as executed by the first party to execute this Agreement (the "**Offeror**") shall constitute an offer to the other party to execute this Agreement (the "**Offeree**"). The Offeree shall accept the offer, if at all, by delivering to the Offeror one (1) fully executed original of this Agreement on or before 5:00 p.m. on the Acceptance Date. The notice provisions of this Agreement notwithstanding, acceptance of this offer shall be effective only upon the actual receipt by the Offeror of the aforesaid executed original. This offer, if not timely accepted as aforesaid, shall expire and be of no further force and effect at this time and date set forth in this Section.

   20.2 **Binding Effect.** This Agreement shall not be binding upon any party signatory hereto until Buyer and Seller have each executed at least one (1) original of this Agreement and have initialed any changes hereto.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Seller:

Betty L McClanahan

By: *Betty L McClanahan*

Print Name: BETTY L. MCCLANAHAN

Title: OWNER - Seller

Date: 7-24 2017

Buyer:

John C. Pritzlaff IV or Assigns

By: *[signature]*

Print Name: John Pritzlaff

Title: _____

Date: 7/20/2017